**BOYD BROTHERS TRANSP. COMPANY, INC.,** Plaintiff,

v.

**The UNITED STATES, Defendant.**

No. 90–71T.

United States Court of Federal Claims.

Dec. 30, 1992.

Gerald A. Kafka and Rita A. Cavanagh, Washington, DC, for plaintiff; Richard C. Hutchison, Salt Lake City, UT, of counsel.

Mildred L. Seidman, David Gustafson, and Ellen C. Specker, with whom was Acting Asst. Atty. Gen., James A. Bruton, Washington, DC, for defendant.

## OPINION

ANDEWELT, Judge.

In this tax refund action, plaintiff, Boyd Brothers Transportation Company, Inc., an interstate trucking company, seeks reimbursement of Federal Insurance Contributions Act (FICA) taxes plaintiff alleges it erroneously overpaid for the eight tax quarters of 1985 and 1986. Plaintiff contends that in calculating its FICA taxes due for these quarters, it incorrectly classified certain travel advances and reimbursements paid to its employees as "wages" subject to FICA taxes. Presently before the court are the parties' cross-motions for partial summary judgment. In this opinion, the court will address one issue presented in the parties' motions. This issue involves the proper interpretation of the identification requirement contained in Treas.Reg. § 31.3121(a)–1(h), the regulation controlling FICA tax treatment of employer payments to employees for travel and other business expenses.[1] The other

---

1. The facts set forth herein are drawn from the various filings of the parties. These facts are given for background purposes and are not de-

issues raised in the parties' cross-motions will be addressed in a subsequent order.

### I.

Plaintiff employs long-haul, interstate truck drivers. During the period in issue, plaintiff paid these drivers primarily on a cents-per-mile basis. Depending upon driver experience, the drivers received 20–23 cents per mile plus an additional one to five cents per mile if the drivers satisfied certain safety and fuel mileage standards. Pursuant to procedures set forth in plaintiff's "Driver Manual," plaintiff offered these drivers the option of receiving a weekly advance of up to $100 for personal expenses if "a driver [was scheduled to be] out on the week-end, not coming home or not at his home terminal." Plaintiff contends that during 1985 and 1986, these drivers spent an average of 294 days per year on the road on company business and that while away from home, they incurred a minimum of between $80 and $100 per week for various travel expenses, *e.g.*, food, lodging, showers, and other incidentals.

As described below, Treas.Reg. § 31.-3121(a)–1(h) provides that under specified circumstances, advances and reimbursements for travel and other business expenses are not included as "wages" and, hence, are not subject to FICA taxes. Plaintiff alleges that for the eight tax quarters in issue, it erroneously paid FICA taxes on advances and reimbursements for travel expenses which should have been excluded from "wages" under the regulation. Specifically, plaintiff contends that it intended five to six cents of the 20–23 cents per mile paid to its long-haul drivers to cover travel expenses. However, in calculating FICA taxes due, plaintiff included this five to six cents per mile as "wages"

because plaintiff was unaware that Section 3121 of the Internal Revenue Code (IRC), 26 U.S.C. § 3121, and Treas.Reg. § 31.-3121(a)–1(h) permitted exclusion of such payments from "wages." Plaintiff paid FICA taxes on this five to six cents per mile both when plaintiff paid its drivers in the form of an advance, as outlined in its "Driver Manual," and when plaintiff included the five to six cents per mile along with payments made for completed work.

In 1987, plaintiff became aware of its alleged error in calculating FICA taxes due for the eight tax quarters of 1985 and 1986. Thereafter, in its Form 941 filings for the tax quarters ending December 31, 1988, and March 31, 1989, plaintiff claimed a total FICA credit equal to the amount of its alleged FICA overpayments during the eight tax quarters of 1985 and 1986. To support these credit claims, plaintiff attached to its Form 941 for the tax quarter ending December 31, 1988, a Form 941c ("Statement to Correct Information") for each of the eight tax quarters of 1985 and 1986. On each Form 941c, plaintiff specified the amount of its alleged overpayment for that particular quarter.[2] However, the Internal Revenue Service (IRS) disallowed plaintiff's claims and assessed plaintiff for unpaid FICA taxes in the amount of these claimed credits. In turn, plaintiff paid $2,000 of the assessment and later filed a refund claim.[3] The IRS disallowed plaintiff's claim for refund, and on January 22, 1990, plaintiff filed the instant action to recover the $2,000 payment.

### II.

Under the IRC, both an employer and its employees must pay FICA taxes on the employees' "wages." *See* 26 U.S.C. §§ 3101(a) and 3111(a). Section 3121(a) of

terminative of the issue addressed below, which is purely an issue of law.

**2.** Plaintiff contends that in 1985 it overpaid a total of $134,383.19 in FICA taxes and that in 1986 it overpaid a total of $157,146.93 in FICA taxes.

**3.** Prior to claiming a refund, plaintiff paid each long-haul driver on its payroll during 1985 and during 1986 the full amount of the employee

portion of FICA taxes for which plaintiff had claimed a credit. Plaintiff sent each of these employees a check which contained a consent and waiver endorsement on the back. Each employee who cashed the check thereby signed the consent and waiver statement. In addition, for each of these employees, plaintiff filed a Form W–2c which decreased the amount of the employee's compensation subject to FICA taxes.

the IRC defines the term "wages" as "all remuneration for employment" unless specifically excepted thereunder. Treas.Reg. § 31.3121(a) implements the exceptions set forth in Section 3121(a) of the IRC and details circumstances under which an employer's remuneration to its employees does not constitute "wages." Section 31.-3121(a)–1(h) addresses advances and reimbursements for travel expenses and provides, in pertinent part:

> Amounts paid specifically—either as advances or reimbursements—for traveling or other bona fide ordinary and necessary expenses incurred or reasonably expected to be incurred in the business of the employer are not wages. Traveling and other reimbursed expenses must be identified either by making a separate payment or by specifically indicating the separate amounts where both wages and expense allowances are combined in a single payment.

The parties' cross-motions for partial summary judgment raise a series of issues. After hearing oral arguments on these motions, the court permitted limited discovery and ordered additional briefing. As indicated above, this opinion will address the single issue of the required timing of the identification called for in the second sentence of Treas.Reg. § 3121(a)–1(h) in situations where an employer combines both wages for work performed and reimburse-

ment for travel expenses in a single payment.

Defendant, reiterating an interpretation of Treas.Reg. § 31.3121(a)–1(h) taken by the IRS in a 1955 Revenue Ruling,[4] contends that when an employer pays advances or reimbursements for travel expenses, the regulation requires identification of the respective amounts paid as wages and for travel expenses "at the time of payment." Two recent decisions in district courts have agreed with this interpretation of the regulation. *United States v. Allen*, No. 1:91CV0244, 1992 WL 437652 (N.D.Ohio Nov. 24, 1992) (Perelman, Mag.); *Fleet Management Services, Inc. v. United States*, No. C–1–91–052, 1992 WL 420858 (S.D.Ohio May 28, 1992). Plaintiff, however, disagrees and contends that an employer can make the required identification of the amounts paid as wages and for travel expenses after payment has been made. Hence, plaintiff contends that it adequately identified the respective amounts it paid to its drivers as wages and for travel expenses when, long after plaintiff had paid its FICA taxes for the eight tax quarters of 1985 and 1986, it submitted Forms W–2c and 941c identifying the amounts plaintiff allegedly paid for travel expenses but erroneously reported as wages.[5]

### III.

■ The wording of Treas.Reg. § 31.-3121(a)–1(h) and the general structure of

---

**4.** Rev.Rul. 55–196, 1955–1 C.B. 492, discusses an employer's FICA tax liability for payments to a traveling salesman. It provides, in pertinent part:

> However, if under arrangements between the traveling salesman and his employer there exists an express or implied agreement or understanding that some part of the traveling salesman's gross commissions is to be considered either (a) an allowance toward expenses to be incurred in the business of the employer, or (b) a reimbursement for expenses previously incurred by the traveling salesman in the business of the employer, the difference between the gross commissions and the allowances or reimbursements for expenses constitutes the wages to be reported as subject to the Federal employment taxes and to income tax withholding under ... the Code *provided, of course, proper identification is made at the time of payment.*

(Emphasis added.)

**5.** Plaintiff cites Priv.Ltr.Rul. 85–31–006 (Apr. 4, 1985) to support its argument that plaintiff satisfied the identification requirement contained in Treas.Reg. § 31.3121(a)–1(h) when plaintiff prepared Forms W–2c. While the IRS does not clearly articulate what act constitutes the required identification in Priv.Ltr.Rul. 85–31–006, the IRS does not indicate that a standard other than the "at the time of payment" standard articulated in Rev.Rul. 55–196 applies. Rather, when the IRS describes the applicable law in Priv.Ltr.Rul. 85–31–006, the IRS quotes the "at the time of payment" discussion in Rev.Rul. 55–196 and, ultimately, concludes that "separate amounts of wages and meal allowances were identified, *as required by the regulations*" (emphasis added).

the regulations implementing Section 3121(a) of the IRC support defendant's proposed interpretation. As to the wording, when the first two sentences of Treas.Reg. § 31.3121(a)–1(h) are read together, as they must be under accepted rules of statutory interpretation (*see, e.g., United States v. Morton*, 467 U.S. 822, 828, 104 S.Ct. 2769, 2772, 81 L.Ed.2d 680 (1984)), both sentences seem to establish requirements that must be satisfied at the time an employer pays an employee for travel expenses incurred or reasonably expected to be incurred. In commencing with the phrase "[a]mounts paid specifically," the first sentence necessarily contains a temporal requirement that focuses on the time of payment. For amounts to be "paid specifically" for a particular purpose, an employer must reasonably intend at the time of payment for the payment to be for that particular purpose. Thus, for amounts to be "paid specifically ... as advances or reimbursements for ... traveling ... expenses," an employer reasonably must intend "at the time of payment" for the amounts paid to cover such travel expenses.

Since the first sentence of Treas.Reg. § 31.3121(a)–1(h) is definitional and establishes that "[a]mounts paid specifically" for travel expenses are "not wages," the second sentence is necessarily subordinate to the first. The second sentence, therefore, specifies an additional requirement that an employer must satisfy for a payment to constitute an "[a]mount[ ] paid specifically ... for traveling ... expenses" and to qualify as "not wages" not subject to FICA taxes.

The wording of the subordinate second sentence does not indicate a shift away from the "at the time of payment" focus of the first sentence. In commencing with the phrase "[t]raveling and other reimbursed expenses must be identified," the second sentence establishes an identifica-

tion requirement for the "[a]mounts paid specifically" referred to in the first sentence. The second sentence then proceeds to explain *how* this identification requirement may be satisfied—"either by making a separate payment or by specifically indicating the separate amounts where both wages and expense allowances are combined in a single payment." Rather than indicating a change from the temporal focus of the first sentence, the second sentence continues the emphasis on the payment itself and on the time of the payment. The first identification alternative of the second sentence is *"by making* a separate payment"* (emphasis added). This option necessarily focuses on an employer's action "at the time of payment" because the payment itself is the identification. The second alternative involves a "single payment" rather than a "separate payment," but the wording of the second identification alternative does not indicate a shift in the temporal focus away from the time of "making" the payment. Thus, the wording of Treas.Reg. § 31.3121(a)–1(h) indicates that the identification requirement must be satisfied at the time of payment.

## IV.

■ The structure of the regulations implementing Section 3121(a) of the IRC also supports defendant's proposed interpretation of Treas.Reg. § 31.3121(a)–1(h). Section 3121(a)(21) of the IRC contains a list of remunerations for employment which, like payments for travel and other ordinary business expenses, are "not wages" and, therefore, are not subject to FICA taxes. However, the regulations implementing these other exceptions listed in Section 3121(a) of the IRC do not include an identification requirement analogous to the requirement contained in Treas.Reg. § 31.-3121(a)–1(h).[6] This different treatment

---

6. For example, Treas.Reg. § 31.3121(a)(11)–1 includes language almost identical to that of Treas.Reg. § 31.3121(a)–1(h), except that there is no similar identification requirement. Treas. Reg. § 31.3121(a)(11)–1(a) provides, in pertinent part:

The term "wages" does not include remuneration paid on or after November 1, 1964,

to or on behalf of an employee, either as an advance or reimbursement, specifically for moving expenses incurred or expected to be incurred, if (and to the extent that) at the time of payment it is reasonable to believe that a corresponding deduction is or will be allowable to the employee under section 217. The reasonable belief contemplated by the statute

suggests that the IRS added the identification requirement to Treas.Reg. § 31.-3121(a)–1(h) to serve some significant tax enforcement purpose.

Plaintiff contends, in effect, that under its interpretation, the second sentence of Treas.Reg. § 31.3121(a)–1(h) would serve such a purpose by obliging an employer to create a document, auditable by the IRS, which specifies the amounts the employer paid for employee travel expenses. Specifically, plaintiff argues: "After-the-time-of-payment accounting for expense reimbursements on Forms W–2c provides the [IRS] with the necessary audit 'trail' to determine whether employee expense deductions claimed on income tax returns are bona fide and whether the FICA and income tax wage base has been correctly reported." But if, as plaintiff proposes, an employer can prepare a document that provides an audit trail long after the employer has made actual payments for such expenses, an obligation to create such a document would not bring significant benefit to the IRS in enforcing compliance with either FICA tax obligations or general income tax obligations.[7]

With regard to the IRS's ability to enforce FICA tax obligations, the "auditable" document on which plaintiff focuses would not give the IRS any significant numerical information that an employer would not otherwise be obliged to present in an IRS audit. When a tax payment issue arises

between the IRS and a taxpayer, the burden of proof is generally on the taxpayer to demonstrate that it correctly calculated taxes owed on monies it paid or received. *See, e.g., Bull v. United States,* 295 U.S. 247, 260, 55 S.Ct. 695, 700, 79 L.Ed. 1421 (1935).[8] Thus, if during an IRS audit an employer contends that certain payments to an employee should not be subject to FICA taxes because such payments covered travel expenses, the employer would have the burden, under Treas.Reg. § 31.-3121(a)–1(h), to prove that these payments were "[a]mounts paid specifically ... for traveling ... expenses." To satisfy this burden, an employer reasonably would have to specify which amounts of what payments to its employees it alleges covered travel expenses rather than wages. Such proof would be required even in the absence of any identification requirement in Treas.Reg. § 31.3121(a)–1(h). Plaintiff's interpretation of the second sentence of the regulation therefore would not result in the IRS receiving any numerical information that it would not otherwise receive during an audit.[9]

Moreover, such an "auditable" document, prepared long after an employer has made a particular payment, would not aid the IRS in assessing the employer's relevant intent, *i.e.,* whether at the time of payment the amounts paid were "paid specifically ... for traveling ... expenses." Indeed, since plaintiff's interpretation of Treas.

---

may be based upon any evidence reasonably sufficient to induce such belief....

**7.** Plaintiff also contends that its interpretation of Treas.Reg. § 31.3121(a)–1(h) would yield significant benefits by reducing "the administrative burden on the [IRS] and on the employer and employee of a case-by-case consideration of the validity of employee business expenses for FICA tax purposes." But any such decrease in administrative burden that stems from Treas.Reg. § 31.3121(a)–1(h) is the result of the first sentence of the regulation, not the second. The first sentence eliminates the need for a case-by-case review of employees' actual business expenses by permitting an employer instead to focus on reasonably expected expenses. The first sentence of the regulation classifies payments of "expenses ... reasonably expected to be incurred" as "not wages." It does not appear that the identification requirement in the second sentence would have any additional impact

on the need for a case-by-case study of employees' actual business expenses.

**8.** Consistent with this burden of proof, Treas. Reg. § 301.6402–2 requires that a taxpayer making a claim for refund or credit "set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the [IRS] of the exact basis thereof."

**9.** Forms W–2c and 941c, which plaintiff contends satisfy the identification requirement contained in Treas.Reg. § 31.3121(a)–1(h), in effect, simply require specification of the amounts by which the IRS should reduce employees' wages subject to FICA taxes listed in the original Forms W–2 and 941. Thus, even if there were no identification requirement in the second sentence of Treas.Reg. § 31.3121(a)–1(h), plaintiff would be obliged to present this information to secure a credit or refund.

Reg. § 31.3121(a)–1(h) renders the timing of the required identification essentially irrelevant, it apparently would be sufficient under plaintiff's interpretation for an employer to make the required identification at a point in time after the IRS has commenced an audit and has asked the employer to justify its decision not to pay FICA taxes on certain employee payments. Clearly, when evaluating intent, the IRS would not reasonably be expected to give any significant weight to such a self-serving document prepared after an audit has commenced.

Next, plaintiff's proposed interpretation of Treas.Reg. § 31.3121(a)–1(h) also would not yield any significant benefit to the IRS in enforcing employee compliance with general income tax obligations. The "auditable" document an employer would be obliged to create under plaintiff's interpretation would not be of significant help to the IRS in evaluating the correctness of a business expense deduction an employee claimed on his or her annual income tax. There is no requirement in Treas.Reg. § 31.3121(a)–1(h) that an employer file the "identification" with the IRS. It appears sufficient that an employer make an identification and keep it in its files. (Indeed, for the separate payment option of Treas.Reg. § 31.3121(a)–1(h), the check itself serves as the identification and there is no obligation to file such a check with the IRS.) Furthermore, plaintiff's proposed interpretation of the regulation, unlike defendant's, would not assure that any "auditable" document is created in advance of an audit of an employee's annual income tax return. Indeed, plaintiff would permit an employer to create such an auditable document long after the employer made payments to its employees and long after its employees filed their pertinent annual income tax returns.

In any event, Treas.Reg. § 31.3121(a)–1(h) does not appear to be the proper place to turn when looking for regulations that enhance the IRS's ability to police compliance with general income tax laws. Treas. Reg. § 31.3121(a)–1(h) is directed at an employer's obligation to pay FICA taxes on payments for travel and other business expenses, not at an employee's obligation to pay income taxes on such payments. The obligation to pay income taxes on such payments is covered under a separate statute and in separate regulations. *See* 26 U.S.C. § 162; Treas.Regs. §§ 1.62 and 1.162. These authorities employ a standard for treating payments for business expenses that is different than the standard employed in Section 3121 of the IRC. Payments that are "not wages" under Section 3121 are not always deductible income under Section 162 and, hence, may be subject to income tax.[10] Given this distinction, absent some clear indication to the contrary, it does not seem appropriate to conclude that the IRS intended the regulations defining FICA tax liability to create procedures to facilitate the IRS's policing of employee compliance with the general income tax laws.

Thus, the structure of the pertinent statutes and regulations suggests that the identification requirement in the second sentence of Treas.Reg. § 31.3121(a)–1(h) was added to enhance the IRS's ability to enforce compliance with FICA tax requirements. While plaintiff's proposed interpretation of the regulation would not further this purpose in any significant way, defendant's proposed interpretation would by requiring an employer to create a contemporaneous indication of intent to pay travel expenses at the time the employer makes a payment. As a general matter, a contemporaneous explanation of the purpose of a payment is more reliable than an explanation provided long after the payment occurs. Memories can fade and recollections

---

**10.** For example, pursuant to Treas.Reg. § 31.-3121(a)–1(h), traveling or other business expenses that are "incurred or reasonably expected to be incurred" do not constitute wages, whereas Section 162 of the IRC requires that business expenses must be "paid or incurred" to qualify as deductible income. Thus, under Sec-

tion 162 of the IRC, if an employer makes payments for business expenses that reasonably are expected to be incurred, but are not actually incurred, such payments would constitute "not wages" for FICA tax purposes but would not qualify as deductible income for general income tax purposes.

can be inaccurate. In addition, the passage of time can impact the incentive and ability to tell the truth. With respect to FICA tax payments, if an employer is not required to specify whether a payment covers travel expenses at the time the payment is made, there is a risk that the employer and employee will engage in post-payment collusion aimed at convincing the IRS to classify as travel expenses payments that, when made, were not specifically intended as travel expenses.[11] *See Fleet Management,* No. C–1–91–052, slip. op. at 6–7. Certainly, a regulation that diminishes the opportunity for post-payment fraud and collusion will help the IRS enforce compliance with FICA tax obligations.

In sum, both the wording of Treas.Reg. § 31.3121(a)–1(h) and the structure of the IRS's regulations implementing Section 3121(a) of the IRC favor defendant's position that Treas.Reg. § 31.3121(a)–1(h) requires an identification of the respective amounts paid as wages and for travel expenses "at the time of payment." The court therefore adopts this interpretation.

### V.

■ Plaintiff contends that interpreting Treas.Reg. § 31.3121(a)–1(h) to require identification of amounts paid for travel expenses at the time of payment is inconsistent with a taxpayer's general ability under the IRC to file amended returns to correct errors made in determining taxes due.[12] However, under the court's interpretation of Treas.Reg. § 31.3121(a)–1(h), identification at the time of payment is a prerequisite under the regulation for a payment to qualify as "not wages" not subject to FICA taxes. Thus, if there is no identification of the amounts paid as wages and for travel expenses at the time of payment, the payment constitutes "wages," and, therefore, FICA taxes must be paid on the entire amount of the payment. If there is no adequate identification at the time of payment but the taxpayer nevertheless seeks a credit or refund, the taxpayer, in effect, is not seeking to correct a previous error in reporting taxes. The taxpayer would have reported its taxes correctly because in the absence of a timely identification of the "[a]mounts paid specifically ... for traveling ... expenses," the payment would have constituted "wages" and, as such, would properly be subject to FICA taxes. *See, e.g., Commissioner v. National Alfalfa Dehydrating & Milling Co.,* 417 U.S. 134, 149, 94 S.Ct. 2129, 2137, 40 L.Ed.2d 717 (1974) (a taxpayer "must accept the tax consequences of his [or her] choice, whether contemplated or not").

Plaintiff also asserts that defendant's interpretation of Treas.Reg. § 31.3121(a)–1(h) potentially can produce inequitable and anomalous results. In response, it is true that defendant's interpretation results in a rigid rule, and if an employer does not obey this rule, payments which the employer intended to cover reimbursements for travel expenses will be treated as "wages" subject to FICA taxes. But rigid rules often seem inequitable to those who do not follow them and occasionally can produce arguably anomalous results.[13] Here, as ex-

---

**11.** Obviously, an employer and employee could collude prior to payment. But, as the time period for possible collusion lengthens, there is a corresponding increase in the opportunity for and, hence, the likelihood of collusion.

**12.** Plaintiff cites IRS Notice 894 (August 1984) to support its argument that the IRS contemplated allowing employers to correct tax filings in which the employer erroneously classified advances and reimbursements of business expenses as "wages" subject to FICA taxes. But IRS Notice 894 applies, by its terms, to tax year 1989, and in any event, cannot be interpreted to constitute an abandonment by the IRS of its interpretation of Treas.Reg. § 31.3121(a)–1(h), contained in Rev.Rul. 55–196, 1955–1 C.B. 492.

**13.** The instant case potentially could produce results that could be deemed anomalous. For example, it is possible that plaintiff could demonstrate that at the time of payment it intended certain payments or portions of those payments to cover travel expenses. If plaintiff can make such a demonstration of intent, the ability of plaintiff and its employees to recover previously paid FICA taxes could depend upon the rather fortuitous event of whether the employees chose to receive payments for travel expenses in the form of an advance or instead chose reimbursement of the expenses in a single check along with wages. If an employee chose an advance, a sufficient identification under the regulation arguably occurred because a separate payment was made covering only travel expenses. On

plained above, there are tangible countervailing benefits that result from the adoption of a rigid rule requiring identification "at the time of payment." Moreover, both the wording and the structure of the regulation indicate that the IRS chose to create such a rule. Thus, in drafting Treas.Reg. § 31.3121(a)–1(h) as it did, the IRS presumably determined that the benefits of such a rigid rule outweigh any detriments.[14]

## VI.

There are a number of issues presented in the parties' cross-motions for partial summary judgment that are not resolved in this opinion. Apparently, contrary to the position articulated in the 1955 Revenue Ruling (see n. 4, supra), defendant now contends that a prior existing agreement between an employer and employee providing for reimbursement of travel expenses not only constitutes evidence of the employer's intent at the time of payment but also can serve as the identification required at the time of payment in the second sentence of Treas.Reg. § 31.3121(a)–1(h). The court will have to consider whether this interpretation is correct, and, if so, whether plaintiff had a sufficient agreement with its employees that would satisfy the regulation's identification requirement. In addition, this opinion does not address the issue of the appropriate treatment of the advances that plaintiff paid to its long-haul drivers. To the extent that plaintiff made these advances in separate payments, the identification requirement of the second sentence would appear to be satisfied. Therefore, as to these separate payments, the appropriate focus is whether plaintiff satisfied the requirement articulated in the

first sentence of the regulation, i.e., whether the payments were "[a]mounts paid specifically ... for traveling ... expenses." The court will schedule oral argument on these and any other open issues at a later date.

### Conclusion

For the reasons set forth above, the court concludes that to satisfy the identification requirement of Treas.Reg. § 31.-3121(a)–1(h), there must be an identification "at the time of payment" of the "[a]mounts paid specifically ... for traveling ... expenses."

IT IS SO ORDERED.

---

the other hand, if an employee chose reimbursement, and travel expenses and wages were combined in a single payment, FICA taxes potentially could prove unrecoverable on the ground that there had not been a timely identification of the specific amounts paid as wages and for travel expenses.

**14.** 20 C.F.R. § 404.1045, which covers Social Security benefits, contains an identification requirement with essentially the same wording as Treas.Reg. § 31.3121(a)–1(h). To support their respective interpretations, the parties cite certain Social Security cases applying 20 C.F.R. § 404.1045. See, e.g., Davis v. Bowen, 840 F.2d

822 (11th Cir.1988); and Thompson v. Weinberger, 548 F.2d 1122 (4th Cir.1976) (cited by defendant); Livingstone v. Heckler, 618 F.Supp. 720 (D.Md.1985); Sayer v. Richardson, 360 F.Supp. 199 (W.D.La.1973); and Joyner v. Ribicoff, 206 F.Supp. 874 (W.D.Va.1962) (cited by plaintiff). However, these decisions are not binding precedent for this court. Moreover, none of these decisions specifically focuses on the issue addressed herein: whether the identification requirement contained in Treas.Reg. § 31.3121(a)–1(h) has a temporal focus which requires identification at the time of payment.